IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY ROUNDTREE, OLLIE DAILEY, GERRY LEWIS, ANTONIO JAMES, COREY POLITE, HEATHER DAVIS, LATOYA STUART, SYLVIA MATTHEWS, MARIAN PAYNE, NYEZI-ABASI EDET, and BILLY KELLY, | § § § § § § § | |
| *Plaintiffs*, | § § | Civil Action 3:22-cv-2675 |
| vs. | § § § | |
| RAYTHEON TECHNOLGIES CORP., | § § | **JURY DEMANDED** |
| *Defendant.* | § § | |

## PLAINTIFFS' AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiffs Gary Roundtree, Ollie Dailey, Gerry Lewis, Antonio James, Corey Polite, Heather Davis, Latoya Stuart, Silvia Matthews, Marian Payne, Nyezi-Abasi Edet, and Billy Kelly presents their Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981.

### PARTIES

1.  Gary Roundtree is a citizen and resident of the United States, residing Dallas County, Texas.

2.  Ollie Dailey is a citizen and resident of the United States, residing Dallas County, Texas.

3.  Gerry Lewis is a citizen and resident of the United States, residing Dallas County, Texas.

4. Antonio James is a citizen and resident of the United States, residing Dallas County, Texas.

5. Corey Polite is a citizen and resident of the United States, residing Kauffman County, Texas.

6. Heather Davis is a citizen and resident of the United States, residing Denton County, Texas.

7. Latoya Stuart is a citizen and resident of the United States, residing Dallas County, Texas.

8. Sylvia Matthews is a citizen and resident of the United States, residing Dallas County, Texas.

9. Marian Payne is a citizen and resident of the United States, residing Dallas County, Texas.

10. Nyezi-Abasi Edet is a citizen and resident of the United States, residing Dallas County, Texas.

11. Billy Kelly is a citizen and resident of the United States, residing Dallas County, Texas.

12. Each of the Plaintiffs are Black or African American.

13. Raytheon Technologies Corporation is a foreign corporation and has appeared in this case.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

15. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

16. Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

17. At the time of the filing of this case, Raytheon employs Plaintiffs at a facility located in Dallas, County.

## BACKGROUND

**Foreseeability of the Problem**

18. Discrimination and retaliation are foreseeable because businesses know that discrimination and retaliation are prevalent in the United States.

19. A Glassdoor survey reports that 61 percent, or about three in five U.S. employees have witnessed or experienced discrimination in the workplace.[1]

20. The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[2]

21. A report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[3]

22. A report by Ethics & Compliance Initiative finds that when employees at all levels are held accountable, retaliation is not as prominent; however, the retaliation rate is only 16 percent

---

[1] https://about-content.glassdoor.com//app/uploads/sites/2/2019/10/Glassdoor-Diversity-Survey-Supplement-1.pdf (Last visited April 14, 2021).
[2] *Id.*
[3] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).

when managers are held accountable compared to approximately 40 percent when managers are not held accountable.[4]

## The Purpose of the Law

23. Foreseeability is important because the law is meant to be preventative.

24. The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

25. Prevention is the best tool to eliminate harassment in the workplace.

26. Employers must Employers to take appropriate steps to prevent and correct discrimination and retaliation, including unlawful harassment.

27. Corporations may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

28. The right to expect that corporations hire human resources (HR) representatives qualified to follow discrimination and retaliation laws is essential to our community.

29. The right to expect that corporations will adequately train managers to follow discrimination and retaliation law is essential to our community.

30. The right to expect that corporations will supervise managers to follow discrimination and retaliation law is essential to our community.

31. The right to expect that corporations will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

---

[4] https://www.ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation/ (Last visited April 14, 2021).

*Plaintiffs' First Amended Complaint and Jury Demand*                                           *Page 4*

32. The right to expect that corporations must care about workplace laws to protect us from damages is essential to our community.

**Raytheon Is a Global Corporation**

33. Raytheon is a global corporation providing military products and services to countries around the world, such as Saudi Arabia, Australia, the United Kingdom, Poland, and many other countries, not the least of which is the United States.

34. Although Raytheon is a defense contractor for many countries, it is independent and flies its own flag.

35. Raytheon knows that discrimination and retaliation are foreseeable as potential problems in its work and business place.

**Raytheon's Serious System Failure**

36. Raytheon hires Human Resource personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

37. Raytheon fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

38. Raytheon fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

**Consequences of Failure to Enforce**

39. Because Raytheon fails to hire qualified HR personnel and adequately train and supervise managers, the corporation discriminates and retaliates against by first disciplining the employee or agent because of race and then terminating the employee or agent after the employee reported concerns of violations.

40. Raytheon has a contractual employment relationship with Plaintiffs.

41. The term or length of the relationship was terminable at the will of either Raytheon or Plaintiffs, except that Raytheon cannot terminate the relationship for an illegal purpose, such as a violation of the Civil Rights Act of 1866.

42. Raytheon discriminated against and terminated its relationship with Plaintiffs for opposing discrimination in its contractual relationships.

43. Raytheon has a system, scheme, or plan of discriminating persons based on race and retaliating against persons when they oppose or report violations.

44. Congress intended to empower individuals to act as private attorneys general in enforcing discrimination and retaliation laws.

45. Plaintiffs act as private attorneys general in this case to enforce the law and aid in effectuating important congressional and public policies of the highest priority.

46. Raytheon has a pattern or practice of discrimination against a group of Black or African American employees.

47. Raytheon has a pattern or practice of retaliation against persons who oppose race discrimination.

48. Raytheon engages in discrimination and retaliation against a group of African American persons.

49. Raytheon's group discrimination and retaliation raises an issue of general public importance.

50. Raytheon's discriminatory and retaliatory actions are its regular practice, rather than an isolated instance.

51.	Raytheon has a policy of discriminating and retaliating.

52.	Raytheon has a history of discrimination and retaliation.

53.	Raytheon has numerous prior incidents of discrimination and retaliation.

54.	Raytheon's standard operating procedure is to discriminate and retaliate, even if may not always follow that policy.

55.	Raytheon's regular, rather than unusual practice, is to discriminate and retaliate.

56.	Discrimination and retaliation is not isolated, accidental, or sporadic; it is repeated, routine, and of a generalized nature.

57.	Raytheon employs Plaintiffs at is Missile and Defense plant located at 6000 Lemmon Ave., Dallas, Texas.

58.	Raytheon discriminated against Plaintiffs based on wages, promotions, hiring, and a hostile work environment, which included the display of a noose.

59.	Raytheon tolerates the use of the term Nigger as a reference to African Americans.

60.	Raytheon tolerates the promotion of White Supremist ideology in the workplace.

61.	Raytheon favors employees who are not African American in hiring, promotions, and compensation.

62.	Raytheon hires and promotes non-African American persons who are less qualified than African Americans seeking or available for the same position.

63.	Raytheon pays non-African American persons more than similarly situated African Americans.

64.	Raytheon does not strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

65. Raytheon promotes and tolerates retaliation in the workplace.

66. Raytheon knows that its employees fear retaliation in the workplace for opposing or reporting workplace violations.

67. Although foreseeable, Raytheon fails to prevent discrimination against Plaintiffs.

68. Although foreseeable, Raytheon fails to prevent retaliation against Plaintiffs when they report discrimination.

69. Raytheon relies on the fear of retaliation to cover up or promote discrimination and fear of retaliation.

70. Raytheon refuses to conduct a reasonable investigation to substantiate the illegal conduct.

71. Raytheon relies on sham investigations to cover up and promote discrimination and fear of retaliation.

72. Raytheon seeks to find information that does not substantiate Plaintiffs' claims and ignores information that substantiates Plaintiffs' claims.

73. Raytheon views all of the facts in an investigation in its favor rather than in a reasonably objectively manner.

74. Raytheon does not act in good faith in preventing discrimination or retaliation.

75. Raytheon chooses not to adequately train mangers on the signs to recognize discrimination.

76. Raytheon chooses not to adequately train mangers on the signs to recognize retaliation.

77. Raytheon fails to monitor the workplace for signs of discrimination to determine if managers and employees preventing discrimination.

78. Raytheon fails to monitor the workplace for signs of retaliation to determine if managers and employees are preventing retaliation.

79. Raytheon mangers recognize discrimination if someone makes racist comments, although they tolerate it, but managers are not adequately trained to look for signs of discrimination absent racial comments.

80. Raytheon chooses not to adequately train managers that employees or agents who discriminate are not going to admit to discriminating against employees or agents.

81. Raytheon choose not to adequately train managers that retaliators are not going to admit to retaliating against employees.

82. Raytheon choose not to adequately train managers that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

**Discriminatory and Retaliatory Treatment of Plaintiffs**

83. Raytheon treated Plaintiffs, who are African American, differently from persons who are not African American.

84. Each of the Plaintiffs have been subjected to a hostile work environment, adverse actions, and disparate pay and promotion opportunities.

85. Plaintiffs Gary Roundtree, Ollie Dailey, Gerry Lewis, Antonio James, and Corey Polite are machinists at Raytheon.

86. These machinists observed and experienced the racism at Raytheon and repeatedly reported and opposed the discrimination.

87. Plaintiffs Heather Davis, Latoya Stuart, Silvia Matthews, Marian Payne, Nyezi-Abasi Edet, and Billy Kelly were identified by Raytheon as temporary accounting support employees.

88. Raytheon denied these accounting support employees the opportunity to become permanent employees because of their race or for opposing discrimination.

89. Raytheon refuses to pay or promote Plaintiffs on an equal basis as non-African Americans.

90. Raytheon harasses Plaintiffs by engaging in conduct unwelcome to Plaintiffs based on race or protected activity.

91. Raytheon's harassment is such that enduring the offensive conduct becomes a condition of continued employment.

92. Raytheon's conduct toward Plaintiffs is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, offensive, or abusive.

93. Raytheon's conduct is not just petty slights, annoyances, or isolated incidents, except for possibly a few extremely serious actions.

**History of Discrimination and Retaliation**

94. Raytheon has a long history of treating African Americans worse than other employees.

95. Raytheon has a long history or retaliating against employees who oppose or report violations of the law.

96. Plaintiffs are not the only persons to have complained of discrimination or retaliation at Raytheon.

97. Many other persons have complained of discrimination and retaliation at Raytheon.

98. Raytheon does not adequately keep records of prior discrimination or retaliation complaints.

99. In continuing rather than eliminating retaliation, Plaintiffs became the persons being investigated rather than the persons or conduct being complained about.

100. Raytheon managers, HR personnel, and investigators ignore the signs of discrimination and retaliation and do not respond to prevent the discrimination and retaliation.

**Policies Do Not Enforce Themselves**

101. Raytheon has written polices created for the purpose of following laws against discrimination and retaliation.

102. Raytheon knows that the written polices do not enforce themselves.

103. Raytheon' policies promised to protect Plaintiffs from discrimination and retaliation.

104. Raytheon violated its own policies by discriminating and retaliating against Plaintiffs.

105. Raytheon breached its promise to protect Plaintiffs from discrimination and retaliation.

<u>CAUSES OF ACTION</u>

**Violation of the Civil Rights Act of 1866**

106. Plaintiffs' claims for recovery under the Civil Rights Act of 1866 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right

to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

107. This law entitles a person of color to equal opportunity and treatment in employment or other contractual relationships.

108. When an employer or contractor acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

109. A person is also entitled to file suit and recover damages under the Civil Rights Act of 1866 for retaliation for opposing or reporting violations of the Civil Rights Act of 1866, or for participating in an investigation of a violation of the Civil Rights Act of 1866.

110. Plaintiffs belong to a protected group and was subjected to unwelcome harassment based on their race, including a hostile work environment.

111. Raytheon knew or should have known of the harassment but took no prompt remedial action.

112. Plaintiffs were subjected to ridicule or insult or other improper conduct based on their race.

113. The harassment was obnoxious and shocking to the conscience of the ordinary person.

114. The harassment was severe and pervasive, interfering with the terms and conditions of their employment or contractual relationship with Raytheon.

115. The harassment and termination were sufficiently severe or pervasive to alter the conditions of Plaintiffs' contractual relationship with Raytheon.

116. The harassment was objectively and subjectively offensive.

117. The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Plaintiffs.

118. The harassment of Plaintiffs altered a term, condition, or privilege of their contractual relationship with Raytheon.

119. A reasonable person would find that the harassment created and was abusive working environment.

120. Employees or agents of Raytheon participated in the harassment of Plaintiffs.

121. Raytheon knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

122. Raytheon has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

123. Plaintiffs opposed Raytheon denying persons the "right to make" contracts and denying the same "security of persons and property as is enjoyed by white citizens" in the United States as required by federal law. *See* 42 U.S.C. § 1981.

124. Raytheon treated Plaintiffs adversely after they opposed and reported unlawful discrimination.

125. Raytheon engaged in material adverse actions against Plaintiffs, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

126. The harassment of Plaintiffs from Raytheon materially altered their contractual relationship, as well.

127. The termination of the contractual relationship was not only discriminatory, it was retaliatory.

128. Raytheon violated the federal statute by intentionally discriminating and retaliating against Plaintiffs; and, as a direct result of the discrimination and retaliation caused damages to Plaintiffs.

129. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

130. Raytheon knew or should have known that its White employees were discriminating against African Americans and taken corrective action to prevent the discrimination within its control.

131. Raytheon did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees or agents of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory and Equitable Relief**

132. Plaintiffs sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which they are entitled to recovery under their causes of action.

133. Plaintiffs are also entitled to declaratory relief that a violation has occurred.

134. Plaintiffs are also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

**Attorneys' Fees**

135. Plaintiffs are also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

136. Plaintiffs are also entitled to receive punitive damages because Raytheon engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## JURY DEMAND

137. Plaintiffs request a trial by jury to the extent allowed by law.

WHEREFORE, Plaintiffs requests that Defendant Raytheon answer and that on final trial, Plaintiffs have judgment against Defendants for compensatory, declaratory and equitable relief, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which they may be entitled.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 9, 2023, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.

                                */s/ Brian P. Sanford*