# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY ROUNDTREE, OLLIE DAILEY, GERRY LEWIS, ANTONIO JAMES, COREY POLITE, HEATHER DAVIS, LATOYA STUART, SYLVIA MATTHEWS, MARIAN PAYNE, NYEZI-ABASI EDET, and BILLY KELLY, | § § § § § § § | |
| Plaintiffs | § § | Civil Action No. 3:22-cv-2675 |
| v. | § § | |
| RAYTHEON TECHNOLOGIES CORP., | § § | |
| Defendant. | § § § | |

## AMENDED JOINT REPORT REGARDING DISCOVERY DISPUTE

Pursuant to the Court's Standing Order on Discovery and Other Non-Dispositive Motions (Dkt. No. 115), the Parties hereby file the following amended joint report regarding their existing discovery dispute and state as follows.

## I.    OVERVIEW OF THE PARTIES' DISCOVERY DISPUTE AND PRE-MOTION CONFERRALS

**(a) The names of the attorneys or unrepresented parties who participated in the pre motion conference:** Elizabeth L. Humphrey participated in a pre-motion conference on behalf of Defendant, Raytheon Company ("Defendant" or "Raytheon"), and Elizabeth "BB" Sanford participated in the pre-motion conference on behalf of Plaintiffs, Heather Davis, Billy Kelly, Sylvia Matthews, Marian Payne, and Latoya Stuart (collectively, "Plaintiffs").

**(b) The date the conference was held and the amount of time during which the parties conferred:** On September 19, 2024, Attorney Humphrey and Attorney Sanford participated in a pre-motion conference, which lasted approximately 0.60 hours. Also on September 19, 2024, and

315259350v.7

following the pre-motion conference, Attorney Humphrey and Attorney Sanford exchanged e-mail correspondence concerning the discovery disputes discussed in the pre-motion conference. Specifically, Attorney Sanford e-mailed Attorney Humphrey summarizing their pre-motion conference, and Attorney Humphrey clarified Defendant's position regarding certain topics. On the afternoon of December 16, 2024, Attorney Sanford provided Raytheon with a revised list of topics in light of the Court's Memorandum Opinion and Order and Notice of Deficiency. (Dkt. 139). On December 17, Attorney Humphrey and Attorney Sanford exchanged correspondence finalizing this amended joint report for submission to the Court.

(c) **The matters that were resolved by agreement:** During the September 19, 2024 conference, counsel for the Parties conferred regarding Topic Nos. 1- 68, 70, and 76-82 in the Amended Notice of Intent to Take the Oral Deposition of a Corporate Representative (the "Amended Notice"), and for which Defendant served its Responses and Objections to Plaintiffs' Amended Notice. (*See* Defendant's Responses and Objections to Plaintiffs' Amended Notice, attached hereto as **Exhibit 1**.) The Parties agreed to additional topics following the Court's Memorandum and Order regarding the initial joint report.

The topics in dispute are Nos. 1-3, 5-6, 8-14, 1617, and 20-36.

Plaintiffs agreed to limit the temporal scope of their requests to five years, where applicable. Plaintiffs also agreed to remove topics regarding retaliation.

(d) **The specific matters that need to be heard and determined by the Court:**

The matters in dispute can be categorized as follows:

- the breadth and subject matter scope as related to claims or defenses;

- the scope of time and geographical area;

- the scope of comparators; and

315259350v.7

**(e) A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement:** The Parties have provided their respective positions beneath the text of each disputed discovery request below.

## II. DETAILED EXPLANATION OF THE PARTIES' RESPECTIVE POSITIONS WITH RESPECT TO EACH DISPUTED FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) TOPIC

### TOPIC NO. 1:

Defendant's position or opinion on whether loss of talented African American workers is a problem or potential problem for Defendant;

### *DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 1 because it improperly seeks an expert opinion or deposition under the guise of a Rule 30(b)(6) deposition. Defendant also objects to Topic No. 1 because it is overly broad in scope and time, not limited to the relevant decision-maker(s), unduly burdensome, not proportional to the needs of the case, seeks information not relevant to the parties' claims and defenses, and is not reasonably calculated to lead to the discovery of admissible evidence. As drafted, Topic No. 1 has no rational bearing on the underlying legal or factual issues in this case. Defendant also objects to Topic No. 1 because the Court, in response to Defendant's motion to strike, has already granted Defendant's request to strike complaint paragraphs containing general allegations describing the state of discrimination in the United States and the effect of discrimination on the workforce. (*See* Dkt. 84) (striking paragraphs 21-26, 37, 38, 42-48 of Plaintiffs' Third Amended Complaint). **Based on the foregoing, Defendant will not produce a representative to testify regarding Topic No. 1.**

**_PLAINTIFFS' RESPONSE_**:

Pleading and discovery are not identical matters. The Court granted Raytheon's motion to strike these statements which were made as affirmative statements of fact. To be relevant for purposes of discovery, information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018). Then Magistrate Judge Ramirez denied an employer's objection to these topics in an age discrimination case. **Exhibit 2**. As noted and limited by Judge Ramirez, Plaintiffs do not seek Raytheon to take any position or form any opinions regarding these topic, only whether it has any existing knowledge or opinion on these matters. The duty to present and prepare a Rule 30(b)(6) designee requires presenting the corporation's "position" on the topic, not only testifying "about facts within the corporation's knowledge, but also its subjective beliefs and opinions." *United States v. Taylor*, 166 F.R.D. 356, 361(M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) (citations omitted).

The purpose of anti-discrimination laws is to encourage employers to implement programs or policies to prevent discrimination in the workplace. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999). Construing Title VII, which is similar to the Civil Rights Act of 1866, the Supreme Court held that its primary objective is a prophylactic one; it aims, chiefly, not to provide redress but to avoid harm. *Id.* (cleaned up). When the official actions challenged as discriminatory include acts and decisions that do not have a firm basis in well accepted and historically sound non-discriminatory social policy, discriminatory intent may be inferred from the fact that those acts had foreseeable discriminatory consequences. *United States v. Tex. Ed. Agency (Austin Indep. Sch. Dist.)*, 564 F.2d 162, 168 (5th Cir. 1977). *See Loewen v. Turnipseed*, 488 F. Supp. 1138, 1152

(N.D. Miss. 1980) (those charged with carrying out this legislation may be determined to have foreseen the discriminatory consequences of their actions).

Raytheon's knowledge of social policy and discriminatory consequences of their actions, such as the effect on the economy and unemployment, whether employment problems for African-Americans are grave, whether discrimination in employment burdens commerce and the free flow of goods in commerce, and whether most Human Resource professionals would say that the loss of talented African American workers is a problem or potential problem for their organizations, is relevant to foreseeability and punitive damages. The objections should be overruled.

**TOPIC NO. 2:**

knowledge or training of the Civil Rights Act of 1866, as amended (42 U.S.C. § 1981);

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 2 on grounds that is overly broad in scope and time, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of the case since it does not identify whose knowledge or training is being inquired about and is not limited to the relevant decision-maker(s).

**Defendant will produce a representative to testify regarding the decision-maker(s)' knowledge of or training on Defendant's equal employment and non-discrimination policies applicable to Plaintiffs.**

***PLAINTIFFS' RESPONSE***:

The topic is simple, clear, and easy to understand. Knowledge of the law is relevant, at a minimum, to punitive damages. For purposes of punitive damages, the terms "malice" and "reckless indifference" pertain not to the employer's awareness that it is engaging in discrimination, but to its knowledge that it may be acting in violation of federal law. *Kolstad,* 527 U.S. at 527 (intentional discrimination does not give rise to punitive damages where the employer

5

is unaware of the relevant federal prohibition). Raytheon's knowledge of the anti-discrimination law is directly related to prevention and punitive damages. Raytheon's training on the law is relevant to prevention and reckless disregard of the law. The objection should be overruled.

**TOPIC NO. 3:**

    training of supervisors, human resource representatives, and third party investigators who had oversight or made decisions concerning Plaintiffs to recognize and prevent race discrimination and retaliation in the workplace;

***DEFENDANT'S RESPONSE:***

    Defendant objects to Topic No. 3 on the grounds that the request for testimony regarding individuals "who had oversight . . . concerning Plaintiffs" is overbroad. Defendant further objects to Topic No. 3 on grounds to the extent it seeks information not in possession, custody, or control of Defendant, including information about supposed "third party investigators.".

    **Defendant will produce a representative to testify regarding training received by Plaintiffs' supervisors/managers and by any decision-maker(s) on Defendant's equal employment and non-discrimination/retaliation policies applicable to Plaintiffs.** *See Smith*, 2011 WL 6217497, at \*5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at \*7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance.").

315259350v.7

***PLAINTIFFS' RESPONSE***:

The qualifications of supervisors, human resource representatives, and third-party investigators to recognize and prevent race discrimination and retaliation in the workplace are relevant to prevention and punitive damages. Plaintiffs are willing to limit the topic to the decision makers, immediate supervisor overseeing whether the decision makers are discriminating, Tom Shaw, Vice President of Business Services (who himself may have been involved in the decision making), and human resource representatives involved in the process related to Plaintiffs' termination of employment. This limitation naturally limits time and geographic area. With this change, the objection should be overruled.

## TOPIC NO. 5:

policies and procedures for investigating reports of race discrimination and retaliation applicable to Plaintiffs, their supervisors, and human resource representatives involved with Plaintiffs;

## ***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 5 because the terms/phrase "involved with Plaintiffs" is ambiguous and, therefore, Topic No. 5 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 10 on the grounds that it is overly broad, not limited to the relevant decision-maker(s), , not proportional to the needs of the case, seeks information not relevant to the parties' claims and defenses, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the only Plaintiff who complained about matters relevant to Topic No. 5 is Heather Davis, who complained about discrimination, not retaliation and whose claims have since been dismissed **Based on the foregoing, Defendant will not produce a representative to testify regarding Topic No. 5.**

***PLAINTIFFS' RESPONSE***:

The information is relevant and proportional.. Human resource representatives "involved with Plaintiffs" refers to any HR employee with oversight duties for Plaintiffs. The Court overruled a similar request for production (Request No. 3) with similar objections as long as it was limited to five years. Dkt. # 97. Plaintiffs agree to limit the topic to five years.

## TOPIC NO. 6:

the reasons for hiring Plaintiffs;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 6 because it is overly broad in scope in that it is not limited to the Sr. Coordinator Finance Support position at issue or the qualifications or selection criteria for that specific role. Defendant's reasons for hiring Plaintiffs into a different position are not relevant to the claims and defenses at issue. **Defendant will produce a representative to testify regarding the necessary qualifications and selection criteria for the Sr. Coordinator Finance Support role at issue.**

***PLAINTIFFS' RESPONSE***:

"The fact that some of the information sought concerns events occurring outside the prescriptive limit for actionable claims is not a bar [to discovery]." *Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983). "The imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases." *Id*. Plaintiffs were hired in 2021 and terminated in 2022. Understanding the reasons for Raytheon initially hiring Plaintiffs is relevant to Plaintiffs' prima facie claim, Plaintiffs' qualifications, a same-actor inference claim, and for background and context for a jury. Raytheon may make an argument to the Court that this information is not

admissible at trial, but discovery is broader than admissibility. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018)

**TOPIC NO. 8:**

job descriptions, including job qualifications, job duties and responsibilities, essential job functions, job analyses, and job codes, of positions held by Plaintiffs, their supervisors, the HR professionals that supported Plaintiffs' positions, and for Accounts Payable positions in Raytheon's Accounts Payable Department in which Plaintiffs' worked at the time Raytheon terminated their employment and for the six months following their termination;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 8 because the terms/phrases "job analyses", "job codes", and "Texas facilities" are vague, undefined and ambiguous and, therefore, Topic No. 8 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 8 because it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not reasonably limited to the job duties or qualifications for the one and only position to which Plaintiffs were rejected and which is at issue in this case.

**Defendant will produce a representative to testify regarding the job duties and qualifications for the Sr. Coordinator Finance Support role at issue in this case, including the selection qualifications.**

***PLAINTIFFS' RESPONSE***:

This scope is tailored to information regarding Plaintiffs, their supervisors, and their comparators. Defendant terminated Plaintiffs and distributed their jobs and job duties to other employees. The job description and qualifications requirements positions held by Plaintiffs is relevant to prove Plaintiffs' prima facie case and also to prove that Defendant's reason for termination is pretext.

An employment discrimination or retaliation case, by its very nature, involves comparing how the employer treated the plaintiff as compared to other employees who are not regarded as disabled or who did not oppose discrimination. Because employers will never admit a discriminatory motive, circumstantial evidence that the plaintiff was treated differently than other similarly situated employees is the principal type of evidence used to show "causation" in discrimination and retaliation suits. Accordingly, discovery of personnel information relating to similarly situated employees is routinely granted in employment retaliation and discrimination cases. *See Hernandez v. Clearwater Transp., Ltd.*, 1:18-CV-319 RP, 2021 WL 148053, at *3 (W.D. Tex. Jan. 15, 2021) (finding that the plaintiff "is entitled to discovery of possible comparators during the period during, predating, and after her employment," and also found that "a discovery period of four years prior to the incident is reasonable."); *see also Green v. Nicholson Mfg.,* 2005 U.S. Dist. LEXIS 45905 (E.D. Tex. Sept. 23, 2005) ("[T]rial Courts consistently allow discovery of [comparator] personnel files in light of the importance of establishing pretext in discrimination cases.") (*citing Freudensprung v. Offshore Technical Services, Inc.,* 379 F.3d 327 (5th Cir. 2004); *see also Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983) ("To rebut the assertion of a permissible reason for her discharge, [plaintiff] must prove that the asserted reason was no more than a pretext...all or parts of these personnel files can be central to plaintiff's effort to prove pretext and are therefore subject to disclosure."); *see also Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996) (upholding district court's order to produce for in camera inspection the personnel files of 12 designated past or present employees, and 47 undesignated former employees who were comparators to Plaintiff); *see also Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). (Holding that discovery properly allowed of records of other employees arguably guilty of infractions more serious than plaintiffs but not discharged, noting that "in Title

10

VII litigation, courts have customarily allowed a wide discovery of personnel files. All or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext.").

**TOPIC NO. 9:**

employee recruiting policies, practices, or procedures relating to hiring in its Accounts Payable Department, within or outside Raytheon, including job postings or vacancy announcements of positions held by Plaintiffs or for positions for which they interviewed, including those for which it hired Puerto Ricans while Plaintiffs were employed and for six months following their termination based on the "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon" (Raytheon's Response to Interrogatory No. 4);

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 24 on grounds that it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not reasonably limited to the hiring/recruiting polices or practices applicable to the one and only position to which Plaintiffs were rejected and which is at issue in this case.

**Defendant will produce a representative to testify regarding hiring/recruitment policies applicable to the Sr. Coordinator Finance Support role at issue.** *See Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11

11

(holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

***PLAINTIFFS' RESPONSE***:

Defendant argues that Plaintiffs were not hired for a new role. While Plaintiffs disagree and argue Plaintiffs were terminated, Defendant's hiring practices are now a fact issue and in dispute. Plaintiffs need to understand Raytheon's hiring practices and compare this facility's procedures with those of other Raytheon procedures. Plaintiffs were either fired or not hired because of their Race. Defendant's arguments are better suited for information that is admissible or inadmissible at trial, not for what is discoverable. For punitive damages purposes, Plaintiffs need to understand how deep this system failure extends.

**TOPIC NO. 10**:

descriptions, identification, or factors or criteria considered in the decision-making process for job selection and assignment, promotion, training, or transfers of positions held by Plaintiffs, and for which they were qualified, within the Accounts Payable department, at the time Raytheon terminated their employment and for six months following their termination, including for those positions for which Plaintiff interviewed, and those positions given to Puerto Ricans in the Accounts Payable department at the time Raytheon terminated their employment and for six months following their termination;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 10 on grounds that it is overly broad in scope and time, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not reasonably limited to the selection decision at issue for the Sr. Coordinator Finance Support role at issue, and because Plaintiffs do not allege discrimination or retaliation in job assignment, training, promotion, or transfer decisions.

**Defendant will produce a representative to testify regarding the selection criteria applicable to the Sr. Coordinator Finance Support role at issue.** *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist.

LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

***PLAINTIFFS' RESPONSE***:

This topic is narrowly tailored to Plaintiffs and their comparators, those who assumed Plaintiffs' prior roles and those hired for the new position. Defendant argues that Plaintiffs were not hired onto a new role, the Sr. Coordinator Finance Support role. This is not true, Raytheon terminated Plaintiffs. However, the selection of those hired for or transferred to the role is a fact issue. Everyone who obtained the allegedly new role was already employed by Raytheon. Defendant's arguments are better suited for information that is admissible or inadmissible at trial, not for what is discoverable.

**TOPIC NO. 11**:

the performance metrics and numbers in SAP for all Plaintiffs and Accounts Payable employees for 2021-present, including the metrics and numbers for the "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon" (Response to Interrogatory No. 4);

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 11 because the terms/phrases "performance metrics", "numbers", "SAP" and "Accounts Payable employees" are vague, undefined and ambiguous and, therefore, Topic No. 11 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 11 because that it is overly broad in scope, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence – particularly because the topic is not limited to the performance metrics of employees who applied for the Sr. Coordinator Finance Support role at issue. As written, this topic could potentially subsume thousands of data points related to hundreds of Accounts Payable employees across the United States that have nothing to do with

315259350v.7

the claims and defenses at issue and about which a corporate representative cannot be reasonably or easily educated on, let alone accurately explain, discuss, or summarize in a deposition. Defendant also objects to Topic No. 11 because it is not limited to information relied upon by the decision-maker(s) in the selection for the Sr. Coordinator Finance Support role at issue. Defendant further objects to Topic No. 11 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2). *See White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 11.**

### *PLAINTIFFS' RESPONSE:*

Raytheon pretextually asserts that Plaintiffs were poor performers. How Raytheon evaluates the performance of Plaintiffs and their peers is relevant , and Plaintiffs should be allowed to test its veracity, including the metrics used to evaluate Plaintiffs versus their comparators, who are employees who took any of Plaintiffs' job responsibilities. Defendant asserted that numerous

Puerto Rican employees assumed Plaintiffs' job duties. Plaintiffs consistently performed the same or better than their peers. Performance metrics are a fact issue in this case. The system in which Raytheon stores or processes its performance metrics is what Plaintiffs intended by "SAP."

**TOPIC NO. 12**:

the performance metrics and numbers in SAP Thomas Shaw, Johnalaine Brevelle, Juan Franco, Michale Sheveland, Esey Kidane, Melissa Kipness, Heather Johnson, and Kimberly Gibson for 2021-2023;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 12 because the terms/phrases "performance metrics", "numbers", and "SAP" are vague, undefined and ambiguous and, therefore, Topic No. 12 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 12 because that it is overly broad in scope, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence – particularly because the topic is not limited to the performance metrics of employees who applied for the Sr. Coordinator Finance Support role at issue. The performance metrics of the managers and corporate executives identified have nothing to do with the claims and defenses at issue. Defendant also objects to Topic No. 12 because it is not limited to information relied upon by the decision-maker(s) in the selection for the Sr. Coordinator Finance Support role at issue. Defendant further objects to Topic No. 12 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2). *See White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's

corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

**Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 12.**

***PLAINTIFFS' RESPONSE***:

Raytheon pretextually asserts that Plaintiffs were poor performers. How Raytheon evaluates the performance of Plaintiffs and their peers is relevant and Plaintiffs should be allowed to test its veracity, including the metrics used to evaluate Plaintiffs versus their comparators some of whom are listed in this topic. Plaintiffs consistently performed the same or better than their peers. Performance metrics are a fact issue in this case. The system in which Raytheon stores or processes its performance metrics is what Plaintiffs intended by "SAP."

**TOPIC NO. 13**:

plans, guidelines, instructions, or policies for interviewing or selection of employees for positions held by Plaintiffs and for which they were interviewed, as well as the "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon";

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 13 because it is overly broad in scope and time, not limited to the relevant decision-maker(s), unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible

evidence—particularly because the topic it is not reasonably limited to the interviewing and/or selection of employees for the Sr. Coordinator Finance Support role at issue

**Defendant will produce a representative to testify regarding the interviewing and/or selection of employees for the Sr. Coordinator Finance Support role at issue**. *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

*PLAINTIFFS' RESPONSE*:

Defendant argues that Plaintiffs were not hired for a new role. While Plaintiffs disagree and argue Plaintiffs were terminated, Defendant's hiring practices are a fact issue and in dispute. Plaintiffs need to understand Raytheon's hiring practices. Plaintiffs were either fired or not hired because of their Race. For punitive damages purposes, Plaintiffs need to understand how deep this system failure extends.

## TOPIC NO. 14:

communications between any employee in Raytheon's human resource department and any managers concerning any termination of employment, layoff, promotion, or non-hiring of any employees (temporary or permanent) of Plaintiffs and the hiring or assignment of persons to positions for which Plaintiffs interviewed and who held the same position as Plaintiffs and the hiring or assignment of "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon";

*DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 14 because the request is unintelligible  and is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 32 because it is overly broad in scope and time, not limited to the relevant decision-maker(s) at issue, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not limited to communications regarding the Sr. Coordinator Finance Support role at issue. As written, this topic could potentially subsume thousands of communications that have nothing to do with the claims and defenses at issue and about which a corporate representative cannot be reasonably or easily educated on, let alone accurately explain, discuss, or summarize in a deposition. Defendant further objects to Topic No. 14 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to time periods

and employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2 and Request for Production Nos. 11, 20, 21). *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at \*12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at \*5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at \*7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at \*10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 14.**

***PLAINTIFFS' RESPONSE***:

This request is limited to communications about the termination, non-hiring, or non-promotion of Plaintiffs' positions. Raytheon terminated every Accounts Payable Black employee at the Richardson facility. What Raytheon HR representatives and managers communicated about the Accounts Payable position is a fact issue in this case. Defendant alleges the terminations were because of performance issues. Communications between key witnesses about the termination of Plaintiffs and comparators hired for Plaintiffs' positions are not overly broad and are proportional to the fact issues in this case.

## TOPIC NO. 16:

the qualifications, race, job duties, resume, and pay of all employees (temporary or permanent) who interviewed for positions held by Plaintiffs and for any position Raytheon for which Raytheon interviewed Plaintiffs, including but not limited to Kevin Lau, Jessica Lawhorn, Eddie Hanna, Estefania Rojas, JudeMarie Tee, Shirley Hernandez, Jessica Cortez, Autumn Castleberry, Ming-En (Andy) Tsai, "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon" (Raytheon Interrogatory Response No. 4), and the Plaintiffs;

## ***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 16 because it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information and confidential personnel information of non-parties, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not limited to information regarding the Sr. Coordinator Finance Support role at issue  and because Plaintiffs do not allege discrimination related to pay.

**Defendant will produce a representative to testify regarding the race and qualifications (from Defendant's perspective) of Plaintiffs and the other candidates who interviewed for the Sr. Coordinator Finance Support role at issue.** *See Mullenix*, 2021 U.S.

21

Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation*, 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

### ***PLAINTIFFS' RESPONSE***:

This topic is relevant to Plaintiffs' prima facie case. The individuals listed in this topic are comparators. The individuals identified were selected for the Sr. Coordinator Finance Support role, to which Defendant seems to agree, and for those individuals identified in Defendant's interrogatory responses as individuals who took over the duties of Plaintiffs after the end of Plaintiff's employment.

315259350v.7

**TOPIC NO. 17:**

communications, emails, chats, and text messages about the hiring process from 2020-present in the Accounts Payable Department, including communications about Plaintiffs;

***DEFENDANT'S RESPONSE:***

Defendant removes its objections regarding vagueness and ambiguity in light of Plaintiffs' narrowed iteration of the topic described below. Defendant objects to Topic No. 17 because it is not proportional to the needs of the case. As written, this topic could potentially subsume hundreds of communications about which a corporate representative cannot be reasonably or easily educated on, let alone accurately explain, discuss, or summarize in a deposition. Moreover, any written communications, emails or text messages speak for themselves and can be discussed with the relevant fact witnesses. Defendant further objects to Topic No. 17 to the extent that it calls for a legal conclusion or opinion and calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege.

**Defendant will produce a representative to testify generally regarding the interview/selection process for the Sr. Coordinator Finance Support role at issue**. *See White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics).

***PLAINTIFFS' RESPONSE***:

This request is limited to communications about the hiring process of Plaintiffs' department. . Plaintiffs agree to limit the request to communications between Raytheon HR

23

representatives and managers and written communications with comparator employees. Communications between key witnesses about the termination of Plaintiffs and comparators hired for Plaintiffs' positions are not overly broad and are proportional to the fact issues in this case.

**TOPIC NO. 20**:

communications between any person on the interview committee between themselves or any other person about the applicants;

***DEFENDANT'S RESPONSE:***

Defendant removes its objections regarding vagueness and ambiguity in light of Plaintiffs' narrowed iteration of the topic described below. Defendant also objects to Topic No. 20 because it is not proportional to the needs of the case. *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics). Defendant additionally objects to Topic No. 20 to the extent that it calls for a legal conclusion or opinion and calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. *See* ; **Defendant will produce a representative to testify generally regarding the interview/selection process for the Sr. Coordinator Finance Support role at issue.**

***PLAINTIFFS' RESPONSE***:

This request is limited to communications about the interview process of Plaintiffs' positions. Communication about the applicants goes to the heart of the pretext element in this case. Communications between key witnesses about the interview of Plaintiffs and comparators hired

for Plaintiffs' positions are not overly broad and are proportional to the fact issues in this case.

**TOPIC NO. 21**:

all notes of any person on the interview committee for Plaintiffs and all who applied for the positions for which Plaintiffs interviewed about the application and selection process;

***DEFENDANT'S RESPONSE:***

Defendant removes its objections regarding vagueness and ambiguity in light of Plaintiffs' narrowed iteration of the topic described below.. Defendant objects to Topic No. 21 because that it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not limited to notes made by any of the interviewers who interviewed the candidates for the position at issue. As written, the topic covers the notes of any interviewer for roles other than the Sr. Coordinator Finance Support role at issue. Moreover, any such notes speak for themselves and can be discussed with the relevant fact witnesses. *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics). **Defendant will produce a representative to testify generally regarding the interview/selection process for the Sr. Coordinator Finance Support role at issue.**

***PLAINTIFFS' RESPONSE***:

This request is limited to notes about the interview process of Plaintiffs' positions. Correspondence about the applicants goes to the heart of the pretext element in this case. A

corporate representative should be able to testify to the written notes on the applicants/comparators. This topic is not overly broad and is proportional to the fact issues in this case.

**TOPIC NO. 22**:

the identity of persons, including race, qualifications, resume, and pay, who made the final decision on the selection to terminate or not hire the Plaintiffs;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 22 because that it is seeks irrelevant information and confidential/sensitive personnel information of non-parties, and is not reasonably calculated to lead to the discovery of admissible evidence—because the job qualifications, work history/experience, and pay of the decision-maker(s) is not at issue and is not relevant to the parties' claims and defenses.

**Defendant will produce a representative to testify regarding the name and race of the individual(s) who made the final decision not to select Plaintiffs for the Sr. Coordinator Finance Support role at issue.**

***PLAINTIFFS' RESPONSE***:

It appears that Defendant agrees to part of this topic. Defendants terminated the employment of Plaintiffs and denied Plaintiffs the Sr. Coordinator Finance Support role. Questioning into the identity of persons who made those decisions is relevant to the adverse employment action element of Plaintiffs' prima facie case. Any confidential information may be protected under a protective order. The objections should be overruled.

**TOPIC NO. 23**:

the number of employees in the Accounts Payable department in 2018, 2019, 2020, 2021, 2022, 2023, and 2024, this includes remote employees, of positions held by Plaintiffs, their

supervisors, the Human Resource professionals that supported Plaintiffs' positions, and for any position Raytheon denied to Plaintiffs;

**_DEFENDANT'S RESPONSE:_**

Defendant also objects to Topic No. 23 because it is overly broad in scope and time, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because its request for information regarding "any position Raytheon denied to Plaintiffs" is not relevant to the Sr. Coordinator Finance Support role at issue. **Defendant will present a representative to testify regarding the number of Accounts Payable employees working in the temporary roles for which Plaintiffs were hired and the Sr. Coordinator Finance Support role at issue, the supervisors of those roles, and the HR professionals that supported those roles in 2021 and 2022.**

**_PLAINTIFFS' RESPONSE_**:

The temporal scope of this request is limited to two years prior to Plaintiffs' hiring until present. The number of employees in the same department as Plaintiffs is not overly broad or disproportionate. Defendant argues that it had legitimate business reasons for hiring and firing Plaintiffs and their potential comparators. Testing the veracity of this excuse includes understanding the amount of potential comparators exist and the basic business needs of Raytheon for employees in Plaintiffs' position.

The racial composition of Raytheon's workforce is relevant to the Plaintiffs' racial discrimination claim. The Supreme Court has endorsed the use of statistics as an "important source of proof in employment discrimination cases." *Hazelwood Sch. Dist. v. U.S.*, 433 U.S. 299, 307, 97 S. Ct. 2736 (1977). In fact, the Court has also found that "in the problem of racial discrimination, statistics often tell much, and Courts listen." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973) citing to *State of Ala. v. United States*, 304 F.2d 583, 586 (5th Cir.),

aff'd sub nom. *Ala. v. United States*, 371 U.S. 37, 83 (1962). Supreme Court cases "make it unmistakably clear that '(s)tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." *United States v. City of Mia., Fla.*, 614 F.2d 1322, 1339 (5th Cir. 1980), on reh'g, *United States v. City of Mia., Fla.*, 664 F.2d 435 (5th Cir. 1981) citing to *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977).

## TOPIC NO. 24:

the growth rate generally of the Accounts Payable department, including the business strategy for needing to hire or fire employees based on the growth or shrinking of the facilities;

## *DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 24 because the phrase/terms "growth rate", "business strategy", "growth", and "shrinking" are vague, undefined and ambiguous and, therefore, Topic No. 24 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 24 because it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant and/or highly confidential proprietary information regarding Defendant's business, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not limited to Plaintiffs' work group/department. As drafted, Topic No. 24 lacks any geographic limitations and seeks testimony regarding Raytheon's entire Accounts Payable department. Defendant further objects to Topic No. 24 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to time periods, employee categories, and departments/work groups/facilities that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2). *See Mullenix*, 2021 U.S. Dist. LEXIS 79965

315259350v.7

at *12-13 (finding a three-year period of discovery to be reasonable); *White Cap., LP v. McSpadden*, 2024 U.S. Dist. LEXIS 148163, *10-11 (N.D. Tex. July 25, 2024) (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 24**.

***PLAINTIFFS' RESPONSE***:

Defendant argues that it had legitimate business reasons for hiring and firing Plaintiffs and their potential comparators, and it argues that it did not have a need to hire all employees who applied for the Sr. Coordinator Finance Support role. Testing the veracity of this excuse includes understanding the business needs and strategy to hire the amount of employees it chose to hire in 2021 and 2022. This includes information on the growth rate and the need for a specific number of accounts payable employees.

**TOPIC NO. 25:**

the cost of training a new Accounts Payable employee in the Accounts Payable department versus the cost of retaining a current Accounts Payable employee in Raytheon's Accounts Payable Department;

315259350v.7

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 25 because it is overly broad in scope and time, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because it is not limited to Plaintiffs' work group/department Moreover, all of the individuals selected for the Sr. Coordinator Finance Support role were existing Raytheon employees. As drafted, Topic No. 25 lacks any geographic limitations and seeks testimony regarding Raytheon's entire Accounts Payable department. *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 25**.

***PLAINTIFFS' RESPONSE****:*

Defendant argues that it had legitimate business reasons for hiring and firing Plaintiffs and their potential comparators, and it argues that it did not have a need to hire all employees who applied for the Sr. Coordinator Finance Support role. Testing the veracity of this excuse includes understanding the cost of training a new employee versus retaining a current employee.

**TOPIC NO. 26:**

the policy and recordkeeping of employee race and demographic information of positions held by Plaintiffs and for the positions for which they interviewed, including the "numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon" (Raytheon interrogatory Response No. 4);

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 26 because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. **Defendant will present a**

representative to testify regarding its EEO policies/procedures applicable to Plaintiffs and their direct supervisors/managers.

***PLAINTIFFS' RESPONSE***:

Defendant systematically terminated the employment of every Black employee in its Accounts Payable Department. What policies, if any, policies and recordkeeping practices Defendant had for employee race and demographic information is relevant in this race discrimination case to show that it knew or did not know how to prevent race discrimination from occurring or that it could recognize race discrimination when it did occur.

Defendant agrees to produce a representative on information for Plaintiffs; however, it refuses to produce a representative on information for comparators. Comparator information, including the employees who assumed job functions of Plaintiffs is relevant and proportional.

**TOPIC NO. 27:**

all EEO reports or studies of discrimination based on race, including any proposals to management to prevent or remedy any discrimination based on race in Texas facilities for the last 5 years;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 27 because it is overly broad in scope and time, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Topic No. 27 to the extent that it calls for a legal conclusion or opinion and calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should

31

be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at \*7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 27.**

## *PLAINTIFFS' RESPONSE*:

The racial composition of Raytheon's workforce is relevant to the Plaintiffs' racial discrimination claim. The Supreme Court has endorsed the use of statistics as an "important source of proof in employment discrimination cases." *Hazelwood Sch. Dist. v. U.S.*, 433 U.S. 299, 307, 97 S. Ct. 2736 (1977). In fact, the Court has also found that "in the problem of racial discrimination, statistics often tell much, and Courts listen." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973) citing to *State of Ala. v. United States*, 304 U.S. 583, 586 (5th Cir.), aff'd sub nom. *Ala. v. United Sta*tes, 371 U.S. 37, 83 (1962). Supreme Court cases "make it unmistakably clear that '(s)tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." *United States v. City of Mia., Fla.*, 614 F.2d 1322, 1339 (5th Cir. 1980), on reh'g, *United States v. City of Mia., Fla.*, 664 F.2d 435 (5th Cir. 1981) citing to *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977).

The Fifth Circuit has found that "[c]onsideration of hiring practices, both before and after the applicable statutory period, is a necessary predicate to meaningful findings regarding employment practice." *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 541 (5th Cir.1980) citing to citing to *Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1220 (5th Cir. 1977). Courts in this district have previously found that EEO-1 reports are relevant in determining the racial makeup of a company in racial discrimination cases under the *Fisher* precedent. *Moore v. Shaw Grp., Inc.*, No. CV 12-757-JWD-RLB, 2015 WL 4939880, at *4 (M.D. La. Aug. 18, 2015). Studies or proposals to remedy past and current racial discrimination would be relevant in determining whether discrimination was a motivating factor in Raytheon's decision to terminate the Plaintiffs. Lastly, Defendant's assertion of attorney-client privilege is improper because no privilege log has been provided and the assertion is conclusory. See In re Santa Fe Intern. Corp., 272 F.3d 705, 710 (5th Cir. 2001). The Court should overrule Raytheon's objections.

## TOPIC NO. 28:

employee surveys or summaries of employee surveys that address, in whole or in part, employment practices and policies, discrimination, compensation, morale, management conduct, or employee interest or preference in advancement or transfer in the Accounts Payable department for the last 5 years;

## *DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 28 because the phrases/terms "employee surveys", "summaries", "preference in advancement or transfer" are vague, undefined and ambiguous and, therefore, Topic No. 28 is not stated with the requisite reasonable particularity. Defendant also objects to Topic No. 28 because it is overly broad in scope and time, not limited to the decision-maker(s) at issue, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because Plaintiffs do not allege discrimination in compensation, morale, general

33

management conduct, advancement/promotion or transfer opportunities. Defendant further objects to Topic No. 28 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to time periods and employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2 and Request for Production Nos. 2, 10, 11, and 20). *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

34

**Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 28.**

**PLAINTIFFS' RESPONSE**:

Plaintiffs incorporate their response from Topic No. 27.

**TOPIC NO. 29:**

complaints or reports of race discrimination and retaliation filed by anyone in the Richardson, Texas, facility in the last 5 years, including investigation process, files, logs, reports, witness statements, and documents;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 29 because it is overly broad in scope and time, not limited to the decision-makers at issue, to discrimination claims by Black/African-American employees, or employees similarly-situated to Plaintiffs, is unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because Plaintiffs were remote employees and did not work at the Richardson facility. Defendant further objects to Topic No. 29 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to time periods and employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Interrogatory Nos. 1 and 2 and Request for Production Nos. 7, 8, and 21). Defendant additionally objects to Topic No. 29 to the extent that it calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. *See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination

315259350v.7

cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *Blackmore*, 2022 U.S. Dist. LEXIS 155249, at *17 ("[A] deponent's answers to 30(b)(6) requests for all facts supporting a claim or defense impermissibly discloses counsel's work product."); *Quarrie*, 2020 U.S. Dist. LEXIS 162867, 2020 WL 5329886, at *4 (D.N.M. Sept. 4, 2020) ("Related to the work-product doctrine is the rule that a party may not use a deposition to inquire into the opposing party's legal opinions."); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 29.**

***PLAINTIFFS' RESPONSE****:*

Plaintiffs incorporate their response from Topic No. 27.

**TOPIC NO. 30:**

lawsuits of race discrimination and retaliation filed by anyone at the Richardson facility in the last 5 years, including investigation process, files, logs, reports, witness statements, and documents;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 30 because t it is overly broad in scope and time, not limited to the decision-makers at issue, to discrimination claims by Black/African-American employees, or employees similarly-situated to Plaintiffs, is unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence—particularly because Plaintiffs were remote employees and did not work at the Richardson facility. Defendant further objects to Topic No. 30 to the extent that it calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Defendant additionally objects to Topic No. 30 because the Court, in response to Plaintiffs' motion to compel, has already sustained Defendant's objections to similar discovery requests that made sweeping requests for the disclosure of broad swaths of information related to time periods and employee categories that were not relevant or proportional to the needs of the case. (*See* Dkt. 97 at 1-2) (denying Plaintiffs' motion to compel with respect to Request for Production Nos. 7 and 8). *See See Mullenix*, 2021 U.S. Dist. LEXIS 79965 at *12-13 (finding a three-year period of discovery to be reasonable); *Smith*, 2011 WL 6217497, at *5 ("Numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked, and to the individuals alleged to have discriminated against the plaintiff."); *Arters*, 2009 WL 1313285, at *7 (finding employer had no obligation to provide information pertaining to employees outside of Plaintiff's unit who reported to a different manager because such information was not relevant to

315259350v.7

plaintiff's discrimination claim); *Marshall*, 576 F.2d at 598 (To discover information regarding employees outside of the employing unit, the plaintiff "must show a more particularized need and relevance."); *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *Blackmore*, 2022 U.S. Dist. LEXIS 155249, at *17 ("[A] deponent's answers to 30(b)(6) requests for all facts supporting a claim or defense impermissibly discloses counsel's work product."); *Quarrie*, 2020 U.S. Dist. LEXIS 162867, 2020 WL 5329886, at *4 (D.N.M. Sept. 4, 2020) ("Related to the work-product doctrine is the rule that a party may not use a deposition to inquire into the opposing party's legal opinions."); *In re Katrina Canal Breaches Consolidates Litigation*, 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 30.**

***PLAINTIFFS' RESPONSE***:

Plaintiffs incorporate their response from Topic No. 27.

**TOPIC NO. 31:**

each plaintiff's qualifications and job history at the Richardson Avenue facility;

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 31 because it is overly broad in scope, unduly burdensome, not proportional to the needs of the case, seeks irrelevant information, and is not reasonably

315259350v.7

calculated to lead to the discovery of admissible evidence—particularly because the topic it is not limited to Plaintiffs' qualification for the Sr. Coordinator Finance Support role at issue.

**Defendant will produce a representative to testify regarding the job duties and qualifications for the Sr. Coordinator Finance Support role, including the selection qualifications, and whether Plaintiffs met the qualifications for that role.** *White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11  (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics); *In re Katrina Canal Breaches Consolidates Litigation,* 2008 U.S. Dist. LEXIS 97410 (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous).

## *PLAINTIFFS' RESPONSE*:

This topic is relevant to Plaintiffs' prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973). Plaintiffs' qualifications for the job is a fact issue in this case.

## TOPIC NO. 33:

the value of each element of Plaintiffs' compensation, such as wages and benefits, including life insurance, health insurance, workers' compensation, and pension plan;

## *DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 33 because the value of the compensation Plaintiffs received in their temporary account payable roles is not relevant to the claims and defenses at issue, because the Plaintiffs were not rejected for the temporary roles. Moreover, questions regarding the value of various items of compensation are better and more easily addressed in an

interrogatory, as opposed to deposition. *See White Cap., LP*, 2024 U.S. Dist. LEXIS 148163, at *10-11 (holding that the plaintiff entity's request that the defendant's corporate representative testify regarding payments made to current or former employees of the plaintiff, including wages, compensation, sales, or discounts, as well as "any and all communications" between the defendant and current or former employees of plaintiff regarding their employment or potential employment with the defendant or resigning from the plaintiff was unreasonable and adopting the defendant's proposed, revised topics). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 33.**

*PLAINTIFFS' RESPONSE*:

Plaintiffs' employment was terminated. The value of Plaintiffs' jobs while in the Accounts Payable position and for the Sr. Financial role, the position to which they were denied is discoverable for and relevant to the damages element of Plaintiffs' case.

## TOPIC NO. 34:

net worth of Defendant;

*DEFENDANT'S RESPONSE:*

Defendant objects to Topic No. 34 on the grounds that it is premature. Defendant is a publicly traded company and its financial information (including whether it would have sufficient financial resources to satisfy a judgment in this case) is publicly available through a variety of sources, including but not limited to, its quarterly and annual filings with the Securities Exchange Commission. Defendant further answers that if the Court submits Plaintiffs' punitive damages claims to a jury and rules that Defendant's net worth is admissible, Defendant will stipulate to its current net worth.

***PLAINTIFFS' RESPONSE***:

"Courts have consistently found that evidence of a defendant's financial worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003) (first citing *United States v. Big D Enters*., 184 F.3d 924, 932 (8th Cir. 1999)The majority of opinions by magistrate judges and district judges in the Fifth Circuit allow net worth discovery during the discovery period. *See Amin–Akbari v. City of Austin, Texas, et al,* Civil Action No. A–13cv472, 2014 WL 4657491 (W.D.Tex. Sept.16, 2014), *citing Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 161 (D.Kan.1990) (when punitive damages claim asserted "... a majority of federal courts permit 'pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages.'"). Thus, because punitive damages are sought, Defendant's net worth is relevant to the present action. *See Sullivan v. Schlumberger Ltd.,* No. 4:20-CV-00662, 2021 WL 3206778, at *4 (E.D. Tex. July 29, 2021).

## TOPIC NO. 35:

the authentication and foundation of the documents produced;

***DEFENDANT'S RESPONSE:***

To the extent Topic No. 35 refers to Defendant's document production, Defendant objects to the Topic because it cannot independently authenticate all of those documents, as some of those documents were received/obtained from third parties (like the EEOC or TWC, for example). Defendant is willing to meet and confer to discuss a reasonable manner to authenticate documents it has produced, including a possible stipulation in advance of trial.

315259350v.7

***PLAINTIFFS' RESPONSE****:*

Plaintiffs seek to authenticate Raytheon documents produced by Raytheon. Plaintiffs will agree to a stipulation if such stipulation occurs before the corporate representative deposition. The parties have been unable to agree to such a stipulation as of the date of this filing.

## TOPIC NO. 36:

all facts and documents upon which you base your contention set forth in Raytheon's affirmative defenses"

***DEFENDANT'S RESPONSE:***

Defendant objects to Topic No. 36 to the extent that it calls for a legal conclusion or opinion and calls for the disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Defendant further objects to Topic No. 36 on the grounds that its investigation, discovery, and depositions in this matter are ongoing, thus it is premature and it is not possible to formulate a complete response at this time. *See Blackmore*, 2022 U.S. Dist. LEXIS 155249, at *17 (D. Neb. Aug. 29, 2022) ("[A] deponent's answers to 30(b)(6) requests for all facts supporting a claim or defense impermissibly discloses counsel's work product."); *Quarrie*, 2020 U.S. Dist. LEXIS 162867, 2020 WL 5329886, at *4 ("Related to the work-product doctrine is the rule that a party may not use a deposition to inquire into the opposing party's legal opinions."). **Based on the foregoing, Defendant will not present a representative to testify regarding Topic No. 36.**

***PLAINTIFFS' RESPONSE****:*

Courts in this district and circuit have found discovery seeking the factual basis for a position on an allegation do not seek work product or materials protected by attorney client privilege. *Dennis v. United States*, No. 3:16-CV-3148-G-BN, 2017 WL 4778708, at *9 (N.D. Tex. Oct. 23, 2017). Responsive discovery that is protected by work product and attorney client

42

privilege are adequately protected by FRCP 30(c)(2) and the corporate representative may be instructed to not answer to preserve privilege. Defendants assert this topic is premature, however Plaintiffs are seeking the factual basis for contentions made by Defendant themselves.


DATED:  December 17, 2024                    Respectfully submitted,

THE SANFORD FIRM                             SEYFARTH SHAW LLP

By: /s/ *Brian P. Sanford w/permission*         By: /s/ *Esteban Shardonofsky*
    Brian P. Sanford                             Raymond Baldwin (*pro hac vice*)
    State Bar No. 17630700                       975 F Street, N.W.
    Elizabeth "BB" Sanford                       Washington, D.C. 20004
    State Bar No. 24100618                       Telephone: (202) 463-2400
    1910 Pacific Ave., Suite 15400               Facsimile: (202) 828-5393
    Dallas, Texas  75201                         rbaldwin@seyfarth.com
    Telephone:  (214) 717-6653
    Facsimile:  (214) 919-0113                   Esteban Shardonofsky
    bsanford@sanfordfirm.com                     Texas Bar No. 24051323
    esanford@sanfordfirm.com                     Elizabeth L. Humphrey
                                                 Texas Bar No. 24083217
    **ATTORNEYS FOR PLAINTIFFS**                 700 Milam Street, Suite 1400
                                                 Houston, Texas 77002-2812
                                                 Telephone: (713) 225-2300
                                                 Facsimile:  (713) 225-2340
                                                 sshardonofsky@seyfarth.com
                                                 ehumphrey@seyfarth.com

                                                 Stephanie J. Manning
                                                 Texas Bar No. 24099422
                                                 1239 Polo Heights Dr.
                                                 Frisco, Texas 75033
                                                 Telephone: (713) 238-1818
                                                 Facsimile: (713) 225-2340
                                                 smanning@seyfarth.com

                                                 **ATTORNEYS FOR DEFENDANT,**
                                                 **RAYTHEON COMPANY**