IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIAN PAYNE, LATOYA STUART, SYLVIA MATTHEWS, and BILLY KELLY, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:22-cv-2675-BN |
| RAYTHEON TECHNOLOGIES CORP., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

### Background

The remaining four Plaintiffs, Billy Kelly, Sylvia Matthews, Marian Payne, and Latoya Stuart, seek the deposition testimony of Defendant Raytheon Company under Federal Rule of Civil Procedure 30(b)(6).

The parties' counsel conferred on September 19, 2024 as to Plaintiffs' Amended Notice of Intent to Take the Oral Deposition of a Corporate Representative, which included 82 topics. The parties' counsel agreed on 5 topics, and Plaintiffs removed 5 topics.

And, then, Raytheon's Motion for Protection Regarding Plaintiffs' Proposed Rule 30(b)(6) Deposition Topics [Dkt. No. 135] presented its objections to the remaining 72 topics for the Court's resolution through a 103-page joint report filed as the Court's Standing Order on Discovery and Other Non-Dispositive Motions [Dkt.

No. 115] requires. *See* Dkt. No. 135-1.

The Court then ordered that, because it is apparent that the parties can and should agree to a much shorter, narrowed list of topics that incorporates the matters on which the parties have landed on agreement and the matters that Plaintiffs have agreed to remove or narrow and that drops objections that Raytheon is not standing on in agreeing to a narrower topic, the parties' counsel are directed to confer again and file an Amended Joint Report Regarding Discovery Dispute that accomplishes that goal and does not add entirely new topics or objections. *See* Dkt. No. 139.

The parties' counsel did so, and Raytheon filed an Amended Motion for Protection Regarding Plaintiffs' Proposed Rule 30(b)(6) Deposition Topics [Dkt. No. 143] along with an Amended Joint Report Regarding Discovery Dispute [Dkt. No. 143-1].

## Legal Standards

The Court has laid out the standards that govern a Federal Rule of Civil Procedure 26(c) motion for protective order will not repeat those standards here. *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242-45 (N.D. Tex. 2016).

Under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party," and, "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity

the matters for examination." FED. R. CIV. P. 30(b)(1), 30(b)(6).

As most recently amended, Rule 30(b)(6) requires that, "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." FED. R. CIV. P. 30(b)(6). The Advisory Committee Notes to the amended provision explain that "[t]he process of conferring may be iterative"; that, "[c]onsistent with [Federal Rule of Civil Procedure] 1, the obligation is to confer in good faith about the matters for examination, but the amendment does not require the parties to reach agreement"; and that, "[i]n some circumstances, it may be desirable to seek guidance from the court."

The United States Court of Appeals for the Fifth Circuit has explained in this context of a Federal Rule of Civil Procedure 30(b)(6) deposition of a corporate representative that "Rule 30(b)(6) is designed to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006) (cleaned up).

"Therefore, the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." *Id.* at 433 (cleaned up).

And "[t]he duty to present and prepare a Rule 30(b)(6) designee goes beyond

matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (cleaned up).

"For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *7 (N.D. Tex. Oct. 23, 2017) (cleaned up).

And, so, "Rule 30(b)(6) requires that a party seeking to depose an organization 'must describe with reasonable particularity the matters for examination.'" *Id.* (quoting FED. R. CIV. P. 30(b)(6)). "Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.* (cleaned up).

"The discovering party's deposition notice is also subject to limitations under [Federal Rule of Civil Procedure] 26," including Federal Rule of Civil Procedure 26(b)(1)'s general provision "that a party may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *MC Trilogy Tex., LLC v. City of Heath, Tex.*, No. 3:22-cv-2154-D, 2024 WL 1641233, at *3 (N.D. Tex. Apr. 16, 2024) (cleaned up).

"Under Rule 26(b)(1), [as amended,] discoverable matter must be both relevant

and proportional to the needs of the case – which are related but distinct requirements. To be relevant under Rule 26(b)(1), … information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Baker v. Walters*, 652 F. Supp. 3d 768, 778 (N.D. Tex. 2023) (cleaned up). But a topic seeking information that is relevant to any party's claim or defense still must also "comply with Rule 26(b)(1)'s proportionality limits." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 418 (N.D. Tex. 2021) (cleaned up).

And Federal Rule of Civil Procedure "26(b)(2)(C) also provides that a court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of Civil Procedure when (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *MC Trilogy*, 2024 WL 1641233, at *3 (cleaned up).

## Analysis

The topics now in dispute are Nos. 1-3, 5-6, 8-14, 16-17, 20-31, and 33-36.

"Plaintiffs agreed to limit the temporal scope of their requests to five years, where applicable," and "also agreed to remove topics regarding retaliation." Dkt. No. 143-1 at 3 of 44.

And the parties explain that "[t]he matters in dispute can be categorized as follows: the breadth and subject matter scope as related to claims or defenses; the scope of time and geographical area; and the scope of comparators." *Id.* (cleaned up).

The Court now makes the following rulings on each topic.

**Topic 1: "Defendant's position or opinion on whether loss of talented African American workers is a problem or potential problem for Defendant"**

For the reasons that Raytheon persuasively explains, this topic is too far afield of the factual issues that will be decided on any trial of Plaintiffs' claims and, so, is, at the least not proportional to the needs of the case. The Court sustains Raytheon's objection to this topic, on which Raytheon will not be required to present a representative to testify.

But Raytheon is reminded that an objection that a discovery request is not "reasonably calculated to lead to the discovery of admissible evidence is misplaced" because "[t]he 2015 amendments to Rule 26 deleted from the definition of relevance information that appears reasonably calculated to lead to the discovery of admissible evidence because [t]he phrase has been used by some, incorrectly, to define the scope of discovery and has continued to create problems given its ability to swallow any other limitation on the scope of discovery." *VeroBlue Farms USA, Inc. v. Wulf*, No. 3:19-cv-764-L, 2019 WL 13193949, at *1 (N.D. Tex. Aug. 20, 2019) (cleaned up).

**Topic 2: "knowledge or training of the Civil Rights Act of 1866, as amended (42 U.S.C. § 1981)"**

The Court agrees that Raytheon's proposal to produce a representative to testify regarding the decision-maker(s)' knowledge of or training on Raytheon's equal

employment and non-discrimination policies applicable to Plaintiffs is sufficient to cover what is relevant to Plaintiffs' claims and proportion to the needs of the case, including Plaintiffs' seeking punitive damages. The Court orders Raytheon to present a representative to testify on Topic No. 2 only as so modified.

**Topic 3:** **"training of supervisors, human resource representatives, and third party investigators who had oversight or made decisions concerning Plaintiffs to recognize and prevent race discrimination and retaliation in the workplace"**

Raytheon agrees to produce a representative to testify regarding training received by Plaintiffs' supervisors/managers and by any decision-maker(s) on Raytheon's equal employment and non-discrimination/retaliation policies applicable to Plaintiffs. Plaintiffs are willing to limit the topic to the decision makers; immediate supervisor overseeing whether the decision makers are discriminating; Tom Shaw, Vice President of Business Services (who himself may have been involved in the decision making), and human resource representatives involved in the process related to Plaintiffs' termination of employment. The Court determines that the topic should, to be relevant and proportional to the needs of the case, be modifies to training on Raytheon's equal employment and non-discrimination/retaliation policies applicable to Plaintiffs received by any decision makers; any immediate supervisor overseeing whether the decision makers are discriminating; and Tom Shaw, Vice President of Business Services. The Court orders Raytheon to present a representative to testify on Topic No. 3 only as so modified.

**Topic 5:** **"policies and procedures for investigating reports of race discrimination and retaliation applicable to Plaintiffs, their supervisors,**

**and human resource representatives involved with Plaintiffs"**

Where Plaintiffs do not dispute that only Heather Davis complained about matters relevant to Topic No. 5, and where Heather Davis is no longer a plaintiff in this case, the Court grants a protective order providing that Raytheon will not be required to present a representative to testify on this topic.

**Topic 6: "the reasons for hiring Plaintiffs"**

For the reasons that Plaintiffs persuasively explain, the Court determines that this topic is relevant to Plaintiffs' claims and proportional to the needs of the case and denies Raytheon's request for a protective order. Raytheon must present a representative to testify on this topic.

**Topic 8: "job descriptions, including job qualifications, job duties and responsibilities, essential job functions, job analyses, and job codes, of positions held by Plaintiffs, their supervisors, the HR professionals that supported Plaintiffs' positions, and for Accounts Payable positions in Raytheon's Accounts Payable Department in which Plaintiffs' worked at the time Raytheon terminated their employment and for the six months following their termination"**

The Court agrees with Raytheon that the only variation on this topic that is relevant to Plaintiffs' claims and proportional to the needs of the case is the job description, duties, and qualifications for the Sr. Coordinator Finance Support role at issue in this case, including the selection qualifications. The Court orders Raytheon required to present a representative to testify on Topic No. 8 only as so modified. The job qualifications, job duties and responsibilities, essential job functions, job analyses, and job codes for positions held by Plaintiffs' supervisors, any human resources professionals that supported Plaintiffs' positions, and any Accounts Payable positions

in Raytheon's Accounts Payable Department are outside the scope of Rule 26(b)(1) in this case.

**Topic 9: "employee recruiting policies, practices, or procedures relating to hiring in its Accounts Payable Department, within or outside Raytheon, including job postings or vacancy announcements of positions held by Plaintiffs or for positions for which they interviewed, including those for which it hired Puerto Ricans while Plaintiffs were employed and for six months following their termination based on the 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon' (Raytheon's Response to Interrogatory No. 4)"**

Raytheon agrees to produce a representative to testify regarding hiring/recruitment policies applicable to the Sr. Coordinator Finance Support role at issue. The Court determines that the relevant and proportional scope of Topic No. 9 extends further and includes the hiring/recruitment policies applicable to the Sr. Coordinator Finance Support role at issue as well as for the positions into which Raytheon hired employees in Puerto Rico who, up to six months after the date on which any of the Plaintiffs last worked for Raytheon in its Accounts Payable Department, assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 9 only as so modified.

**Topic 10: "descriptions, identification, or factors or criteria considered in the decision-making process for job selection and assignment, promotion, training, or transfers of positions held by Plaintiffs, and for which they were qualified, within the Accounts Payable department, at the time Raytheon terminated their employment and for six months following their termination, including for those positions for which Plaintiff interviewed, and those positions given to Puerto Ricans in the Accounts Payable department at the time Raytheon terminated their employment and for six months following their termination"**

Raytheon agrees to produce a representative to testify regarding the selection criteria applicable to the Sr. Coordinator Finance Support role at issue. The Court determines that the relevant and proportional scope of Topic No. 10 extends further and includes the selection criteria applicable to the Sr. Coordinator Finance Support role at issue as well as for the positions into which Raytheon hired employees in Puerto Rico who, up to six months after the date on which any of the Plaintiffs last worked for Raytheon in its Accounts Payable Department, assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 10 only as so modified.

**Topic 11: "the performance metrics and numbers in SAP for all Plaintiffs and Accounts Payable employees for 2021-present, including the metrics and numbers for the 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon' (Response to Interrogatory No. 4)"**

The performance of employees after Plaintiffs stopped working at Raytheon are, at the least, not proportional to the needs of this case presenting the specific employment claims of four individuals who – whether terminated (as Plaintiffs contend) or not selected for a particular, permanent position after their limited-term position was eliminated (as Raytheon insists) – were not selected for a Sr. Coordinator Finance Support. But the performance metrics and numbers for Plaintiffs compared to those – from the same period in which Plaintiffs were employed at Raytheon – of any existing Raytheon employees who were assumed some of the job functions that Plaintiffs performed while employed at Raytheon would be relevant and proportional

to the needs of the case. The Court modifies this topic to be limited to the performance metrics and numbers, during the period of time in which Plaintiffs worked for Raytheon in its Accounts Payable Department, for all Plaintiffs and any Accounts Payable employees who assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 11 only as so modified.

**Topic 12:** **"the performance metrics and numbers in SAP Thomas Shaw, Johnalaine Brevelle, Juan Franco, Michale Sheveland, Esey Kidane, Melissa Kipness, Heather Johnson, and Kimberly Gibson for 2021-2023"**

For the reasons that Plaintiffs persuasively explain, the Court determines that this topic is relevant to Plaintiffs' claims and proportional to the needs of the case but will be limited to the performance metrics and numbers during the period of time in which Plaintiffs worked for Raytheon in its Accounts Payable Department. The Court orders Raytheon to present a representative to testify on Topic No. 12 only as so modified.

**Topic 13:** **"plans, guidelines, instructions, or policies for interviewing or selection of employees for positions held by Plaintiffs and for which they were interviewed, as well as the 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon'"**

Raytheon agrees to produce a representative to testify regarding the interviewing and/or selection of employees for the Sr. Coordinator Finance Support role at issue. The Court determines that the relevant and proportional scope of Topic No. 13 extends further and includes the interviewing and/or selection of employees for the Sr. Coordinator Finance Support role at issue as well as the positions that

Plaintiffs held while working for Raytheon in its Accounts Payable Department and for any positions into which Raytheon hired employees in Puerto Rico who, up to six months after the date on which any of the Plaintiffs last worked for Raytheon in its Accounts Payable Department, assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 13 only as so modified.

**Topic 14:** **"communications between any employee in Raytheon's human resource department and any managers concerning any termination of employment, layoff, promotion, or non-hiring of any employees (temporary or permanent) of Plaintiffs and the hiring or assignment of persons to positions for which Plaintiffs interviewed and who held the same position as Plaintiffs and the hiring or assignment of 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon'"**

"[T]here are some kinds of contention interrogatories where courts have felt that, in their discretion, they could say it ought to be a deposition instead, like a 30(b)(6) deposition." *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-cv-2255-L, 2018 WL 3548866, at *11 (N.D. Tex. July 24, 2018) (cleaned up). But there are also some topics that are not suited to a Rule 30(b)(6) deposition as opposed to, for example, a Federal Rule of Civil Procedure 34 request for production or Federal Rule of Civil Procedure 33 interrogatory. This is one of those topics under the circumstances and is, at the least, not proportional to the needs of the case as a Rule 30(b)(6) topic. The Court sustains Raytheon's objection to this topic, on which Raytheon will not be required to present a representative to testify.

**Topic 16:** **"the qualifications, race, job duties, resume, and pay of all employees (temporary or permanent) who interviewed for positions held by**

**Plaintiffs and for any position Raytheon for which Raytheon interviewed Plaintiffs, including but not limited to Kevin Lau, Jessica Lawhorn, Eddie Hanna, Estefania Rojas, JudeMarie Tee, Shirley Hernandez, Jessica Cortez, Autumn Castleberry, Ming-En (Andy) Tsai, 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon' (Raytheon Interrogatory Response No. 4), and the Plaintiffs"**

Plaintiffs were hired for the positions in which they worked for Raytheon in its Accounts Payable Department. The characteristics of others who interviewed for those positions is not relevant to Plaintiffs' claims. Raytheon agrees to produce a representative to testify regarding the race and qualifications (from Raytheon's perspective) of Plaintiffs and the other candidates who interviewed for the Sr. Coordinator Finance Support role at issue. The Court determines that the relevant and proportional scope of Topic No. 16 extends further and includes the race and qualifications (from Raytheon's perspective) of Plaintiffs and the other candidates who interviewed for the Sr. Coordinator Finance Support role at issue as well as the other candidates who interviewed for any positions into which Raytheon hired employees in Puerto Rico who, up to six months after the date on which any of the Plaintiffs last worked for Raytheon in its Accounts Payable Department, assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 16 only as so modified.

**Topic 17:** "communications, emails, chats, and text messages about the hiring process from 2020-present in the Accounts Payable Department, including communications about Plaintiffs"
**Topic 20:** "communications between any person on the interview committee between themselves or any other person about the applicants"

**Topic 21:** **"all notes of any person on the interview committee for Plaintiffs and all who applied for the positions for which Plaintiffs interviewed about the application and selection process"**

Raytheon agrees to produce a representative to testify generally regarding the interview/selection process for the Sr. Coordinator Finance Support role at issue. Plaintiffs agree to limit Topic No. 17 to communications between Raytheon HR representatives and managers and written communications with comparator employees. But, for the reasons explained as to Topic No. 14, the Court sustains Raytheon's objection to this topic and orders Raytheon to present a representative to testify on Topic Nos. 17, 20, and 21 only as limited to testifying generally regarding the interview/selection process for the Sr. Coordinator Finance Support role at issue.

**Topic 22:** **"the identity of persons, including race, qualifications, resume, and pay, who made the final decision on the selection to terminate or not hire the Plaintiffs"**

Raytheon agrees to produce a representative to testify regarding the name and race of the individual(s) who made the final decision not to select Plaintiffs for the Sr. Coordinator Finance Support role at issue. Plaintiffs maintain that they were terminated; Raytheon disagrees. That is not a matter that the Court can or should resolve at this point. The Court instead orders Raytheon to produce a representative to testify regarding the name and race of the individual(s) who made the final decision not to select Plaintiffs for the Sr. Coordinator Finance Support role at issue or to, if it happened, terminate Plaintiffs from the positions in which they worked in Raytheon's Accounts Payable Department. The Court orders Raytheon to present a representative to testify on Topic No. 22 only as so modified.

**Topic 23:** "**the number of employees in the Accounts Payable department in 2018, 2019, 2020, 2021, 2022, 2023, and 2024, this includes remote employees, of positions held by Plaintiffs, their supervisors, the Human Resource professionals that supported Plaintiffs' positions, and for any position Raytheon denied to Plaintiffs**"

Raytheon agrees to present a representative to testify regarding the number of Accounts Payable employees working in the temporary roles for which Plaintiffs were hired and the Sr. Coordinator Finance Support role at issue, the supervisors of those roles, and the HR professionals that supported those roles in 2021 and 2022. The Court determines that the topic should, to be relevant and proportional to the needs of the case, limited to that scope. The Court orders Raytheon to present a representative to testify on Topic No. 23 only as so modified.

**Topic 24:** "**the growth rate generally of the Accounts Payable department, including the business strategy for needing to hire or fire employees based on the growth or shrinking of the facilities**"

For the reasons that Raytheon persuasively explains, this topic is too far afield of the factual issues that will be decided on any trial of Plaintiffs' claims and, so, is, at the least not proportional to the needs of the case. The Court sustains Raytheon's objection to this topic, on which Raytheon will not be required to present a representative to testify.

**Topic 25:** "**the cost of training a new Accounts Payable employee in the Accounts Payable department versus the cost of retaining a current Accounts Payable employee in Raytheon's Accounts Payable Department**"

For the reasons that Raytheon persuasively explains, this topic is too far afield of the factual issues that will be decided on any trial of Plaintiffs' claims and, so, is, at the least not proportional to the needs of the case. The Court sustains Raytheon's

objection to this topic, on which Raytheon will not be required to present a representative to testify.

**Topic 26:** **"the policy and recordkeeping of employee race and demographic information of positions held by Plaintiffs and for the positions for which they interviewed, including the 'numerous employees in Puerto Rico who assumed some of the job functions that Plaintiff[s] performed while employed at Raytheon' (Raytheon interrogatory Response No. 4)"**

Raytheon agrees to present a representative to testify regarding its EEO policies/procedures applicable to Plaintiffs and their direct supervisors/managers. The Court determines that the relevant and proportional scope of Topic No. 26 extends further and includes Raytheon's EEO policies/procedures applicable to Plaintiffs and their direct supervisors/managers as well as to the employees hired for the Sr. Coordinator Finance Support role at issue and for the positions into which Raytheon hired employees in Puerto Rico who, up to six months after the date on which any of the Plaintiffs last worked for Raytheon in its Accounts Payable Department, assumed some of the job functions that Plaintiffs performed while employed at Raytheon. The Court orders Raytheon to present a representative to testify on Topic No. 26 only as so modified.

**Topic 27:** **"all EEO reports or studies of discrimination based on race, including any proposals to management to prevent or remedy any discrimination based on race in Texas facilities for the last 5 years"**
**Topic 28:** **"employee surveys or summaries of employee surveys that address, in whole or in part, employment practices and policies, discrimination, compensation, morale, management conduct, or employee interest or preference in advancement or transfer in the Accounts Payable department for the last 5 years"**

For the reasons that Raytheon persuasively explains, these topics are too far

afield of the factual issues that will be decided on any trial of Plaintiffs' claims and, so, is, at the least not proportional to the needs of the case. The requested information is, at the least, not proportional to the needs of this case presenting the specific employment claims of four individuals who – whether terminated (as Plaintiffs contend) or not selected for a particular, permanent position after their limited-term position was eliminated (as Raytheon insists) – were not selected for a Sr. Coordinator Finance Support. The Court sustains Raytheon's objection to Topic Nos. 27, 28, is topic, on which Raytheon will not be required to present a representative to testify.

**Topic 29:** **"complaints or reports of race discrimination and retaliation filed by anyone in the Richardson, Texas, facility in the last 5 years, including investigation process, files, logs, reports, witness statements, and documents"**
**Topic 30:** **"lawsuits of race discrimination and retaliation filed by anyone at the Richardson facility in the last 5 years, including investigation process, files, logs, reports, witness statements, and documents"**

Consistent with the Court's prior ruling, *see* Dkt. No. 97, the Court modifies these topics to be limited to complaints and lawsuits alleging racial discrimination, if any, during the last 5 years, by Black employees at the Richardson, Texas facility who reported to Plaintiffs' direct supervisors. The Court orders Raytheon to present a representative to testify on Topic Nos. 29 and 30 only as so modified.

**Topic 31:** **"each plaintiff's qualifications and job history at the Richardson Avenue facility"**

For the reasons that Plaintiffs persuasively explain, the Court determines that this topic is relevant to Plaintiffs' claims and proportional to the needs of the case and denies Raytheon's request for a protective order. Raytheon must present a

-17-

representative to testify on this topic.

**Topic 33:** "the value of each element of Plaintiffs' compensation, such as wages and benefits, including life insurance, health insurance, workers' compensation, and pension plan"

Plaintiffs maintain that they were terminated; Raytheon disagrees. That is not a matter that the Court can or should resolve at this point. The Court determines that this topic is relevant to Plaintiffs' claims and proportional to the needs of the case and denies Raytheon's request for a protective order. Raytheon must present a representative to testify on this topic.

**Topic 34:** "net worth of Defendant"

For the reasons that Plaintiffs persuasively explain, the Court determines that this topic is relevant to Plaintiffs' claims and proportional to the needs of the case and denies Raytheon's request for a protective order. Raytheon must present a representative to testify on this topic.

**Topic 35:** "the authentication and foundation of the documents produced"

Raytheon's must either reach agreement with Plaintiffs' counsel on a reasonable manner to authenticate documents that Raytheon has produced, including a possible stipulation in advance of trial, or must present a representative to testify on this topic.

**Topic 36:** "all facts and documents upon which you base your contention set forth in Raytheon's affirmative defenses"

For the reasons that Plaintiffs persuasively explain, the Court determines that this topic is timely at this stage of the case and relevant to Plaintiffs' claims and

proportional to the needs of the case and denies Raytheon's request for a protective order. Raytheon must present a representative to testify on this topic.

## Conclusion

For the reasons and to the extent explained above, the Court grants in part and denies in part Raytheon's Amended Motion for Protection Regarding Plaintiffs' Proposed Rule 30(b)(6) Deposition Topics [Dkt. No. 143].

And, based on these rulings and considering all the circumstances, the Court determines that, under Federal Rules of Civil Procedure 37(a)(5) and 26(c)(3), the parties will bear their own expenses, including attorneys' fees, in connection with this motion.

SO ORDERED.

DATED: January 28, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-19-